## WEBB et al. v. DEADWYLER et al.

FISH, C. J. 1. An equitable petition was filed for the purpose of subjecting land to certain debts and judgments, and to set aside certain deeds. The pleadings and evidence suggest three possible contentions as to holding the debtor to be the legal or equitable owner of the property in whole or in part: first, by virtue of being an heir or legatee of his deceased father, who was the owner of the entire property; second, by reason of an agreement· between him and certain of his brothers and sisters, in connection with the settling of the interests of a deceased brother and sister in the property of the estate of their deceased father; and third, by virtue of a sale by the executor of the will of the father of the debtor, a purchase of the property by him, a conveyance by the executor to two other persons instead of to the debtor, a reconveyance of most of this property by the two other persons to the individual who was the executor (he being a brother of the debtor), and the holding of the title by him, in whole or in part, for the benefit of the debtor, who was the equitable owner of an interest in the land, if not of the land as an entirety.

(a) The evidence showed that the father of the debtor died testate, and did not show that there was an intestacy as to any part of the estate; thus excluding the theory that the debtor as heir inherited a part of his father's realty. The will was not in evidence, and hence it was not shown that the debtor was a devisee of his father. The general references by witnesses to the children of the testator as his heirs could not supply the failure in proof as above indicated. Accordingly, it is held that the evidence was insufficient to make out a prima facie case of title to the land in the debtor by virtue of being either an heir or devisee of his father.

(b) While there are indications in the evidence that in some way three of the children of the testator claimed to have a third interest each in certain lots of the land, and that an agreement was entered into by a number of persons who described themselves as heirs at law of the testator and also as heirs at law of two of his deceased children, with a view of making a settlement in regard to the shares of the two deceased children; for the reasons indicated in the preceding headnote, and in view of the vague, loose, and indefinite character of the evidence on the subject of how three of the children of the testator claimed to own a certain part of his estate, and as to whether this agreement was signed before or after the sale by the executor of the lots included in it, and also as to the interests of the persons signing the agreement, it can not

be held that a prima facie title to the lots sought to be condemned, or an interest therein, was made out by virtue of such agreement.

(c) There was evidence tending to show the following, among other facts: The father of the debtor died testate. One of the debtor's brothers was executor of the will. The executor sold at public sale three lots of the land sought to be condemned, and they were bid off by the debtor. The executor set out in his return that they had been bought by the debtor at stated prices. An agreement was entered into between the debtor and certain other persons, the signers describing themselves as heirs at law of the testator and also as heirs at law of two of his deceased children, thus indicating a recognition of an interest in the debtor in the land covered by the contract, and an agreement in reference to a settlement in respect to the interests of the deceased children of the testator, with a payment to be made by the debtor. From the confusion in the record it is impracticable to ascertain the exact dates of the transactions. The plaintiffs alleged in their petition that the order for the sale by the executor was granted in 1909, and that the lots in controversy were sold on the first Tuesday in November, 1907, by virtue of such order; and this was admitted by the answer of the defendants. The return of the executor showed that the sale took place on November 4, 1907. It did not appear that any deed was made by the executor to the debtor; but on December 6, 1909, the executor made a conveyance to two other persons, in which instrument it was recited that by virtue of an order of the ordinary, granted on the first Monday in October, 1909, the executor, on the first Tuesday in November, 1909, exposed the property for sale, and that it was bid off by the two named persons at a price stated. The deed then proceeded: "Now the said party of the first part, in consideration of the premises and for a consideration of the sum of $———in hand paid at and before the sealing and delivery of these presents," conveyed the property to the two named persons. On the same date these two persons executed a deed to the individual who was the executor, conveying to him, for a less price than that mentioned in the preceding deed, two of the four lots which were included in it and an undivided half interest in the other two. The debtor remained upon the property, exercising acts of ownership over it, farming on it, renting out some or all of it and collecting rent on one or more occasions. In obtaining credit from some of his creditors, he represented that he owned the property sought to be condemned, but that the title stood in the name of his brother who was the executor; and on one occasion his brother gave a check in part payment of the debtor's indebtedness. The deed from the executor to the two third persons mentioned above was executed when there were a number of debts against the debtor, and shortly after the rendition of judgments in some of them. *Held:* The evidence made out a prima facie case of ownership in the debtor and of an effort to hinder, delay, and defraud his creditors, by keeping the legal title in another. Under such evidence it was error to grant a nonsuit, but the case should have been submitted to a jury for a determination of the issues of fact so involved.

2. In so far as the petition sought to attack the deed made by the executor to the two third persons and the deed made by them to the executor as an individual, on the ground that such transactions amounted in sub-

stance to a purchase by the executor at his own sale, under the evidence in this regard the plaintiffs would not be benefited by such cancellation if entitled thereto; for, as above indicated, if the executor's sale should be set aside, title in the debtor was not otherwise shown either as heir or legatee under his deceased father, who was conceded to have owned the property. The evidence did not authorize a decree of cancellation.

(a) While the right to have decreed void an executor's sale to himself may generally rest in the heirs, and not in the creditors of heirs merely because the executor becomes the purchaser, yet, if an executor and legatees enter into a collusive arrangement for the purpose of defeating the rights of creditors of one of such legatees, and a sham executor's sale and a purchase by him directly or indirectly, and a holding of the title by him for the benefit of the debtor, are used as a means of fraudulently concealing the property of such legatee so as to escape having it subjected by his creditors, such creditors may attack it or show it to be a part of the fraud, in an effort to subject the property of the debtor which would be liable and which is thus sought to be concealed.

3. It is unnecessary to deal with the contentions, raised by the brief of counsel for defendants, that the petition was multifarious, or that there was a misjoinder of causes of actions, or a nonjoinder of a party claimed to be necessary under one of the prayers. Such matters should have been set up by proper demurrer or plea. It has been held above that the evidence made out a prima facie case of an effort to hinder, delay, and defraud creditors, so as to prevent them from realizing their claims from property of the debtor subject thereto; and the contentions just mentioned furnish no reason for sustaining an erroneous grant of a nonsuit. *Judgment reversed. All the Justices concur.*
SEPTEMBER 19, 1914.

Equitable petition. Before Judge Meadow. Elbert superior court. March 14, 1913.

*C. P. Harris* and *John B. Gamble,* for plaintiffs.
*Worley & Nall,* for defendants.